**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FIELDTURF USA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. <u>1:15-cv-11442</u> |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| AVTURF L.L.C. | ) | |
| and | ) | |
| ACT GLOBAL AVTURF, INC. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

1.  Plaintiff FieldTurf USA, Inc. ("FieldTurf"), through counsel, hereby brings its Complaint for Declaratory Judgment against AvTurf L.L.C. and Act Global AvTurf, Inc. (collectively, "Defendants"), and alleges as follows:

**NATURE OF THE COMPLAINT**

2.  This is a declaratory judgment action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seeking a declaration of noninfringement of United States Patent No. 9,157,196 ("the '196 patent"). This action arises out of a substantial, present, and actual controversy between FieldTurf and Defendants concerning the '196 patent.

3.  FieldTurf, a seller, and installer of artificial turf products, submitted a bid to install artificial turf at Chicago's O'Hare International Airport, responsive to Project Number OH6136.200.620, issued by the City of Chicago, O'Hare Modernization Program (the "O'Hare project").

4.  FieldTurf's bid was successful and FieldTurf agreed to install artificial turf as part of the O'Hare project. FieldTurf completed part of this installation in Fall of 2015 and plans to begin completion of the remainder of the project in Spring of 2016.

5.  However, Defendants have attempted to interfere with FieldTurf's work on the O'Hare project by asserting that FieldTurf's work on that project has infringed and will continue to infringe the '196 patent. Defendants have threatened that FieldTurf's work on the O'Hare project in this District therefore cannot lawfully proceed, and that FieldTurf may be liable for money damages and other adverse consequences for its alleged patent infringement.

6.  FieldTurf denies that any of its past, present or future work on the O'Hare project has infringed or will infringe the '196 patent. FieldTurf further denies that it has taken any unlawful and/or injurious action with respect to either Defendant. FieldTurf therefore seeks a declaration of noninfringement of the '196 patent.

## **PARTIES**

7.  Plaintiff FieldTurf USA, Inc. is a corporation organized and existing under the laws of the State of Florida, with a principal place of business in Montreal, Quebec, Canada. FieldTurf USA, Inc., manufactures, sells and installs artificial turf products throughout the United States, including in Illinois and in this District.

8.  Upon information and belief, Defendant AvTurf L.L.C. is an Illinois company, organized and existing under the laws of the State of Illinois. AvTurf L.L.C. maintains a business office at 3012 West 111th Street, Chicago Illinois, 60655. (Exhibits A, B and E.)

9.  Upon information and belief, Defendant Act Global AvTurf, Inc. ("Act Global") is a Texas corporation, organized and existing under the laws of the State of Texas. Act Global

AvTurf, Inc. currently lists its corporate headquarters as 4201 West Parmer Lane, Suite B 175, Austin, Texas 78727.

## JURISDICTION AND VENUE

10. FieldTurf brings this civil action under the Patent Laws, Title 35 of the United States Code, and under 28 U.S.C. §§ 2201 and 2202, to obtain a declaration of noninfringement with respect the '196 patent. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States.

11. Substantial, present, genuine and justiciable controversies exist between FieldTurf and Defendants with respect to alleged infringement of the '196 patent. As set forth below, Defendants' conduct has put FieldTurf under reasonable and serious apprehension of imminent suit by alleging that FieldTurf's current and future anticipated installations in connection with the O'Hare project and elsewhere infringe the '196 patent.

12. This Court has general and/or specific personal jurisdiction over both Defendants.

13. This Court has personal jurisdiction over AvTurf L.L.C. because it is an Illinois company registered with the Illinois Secretary of State and with a designated agent in Illinois for service of process. A copy of AvTurf L.L.C.'s file report from the Illinois Secretary of State is attached as Exhibit A. On information and belief, AvTurf L.L.C. also maintains an office located at 3012 West 111th Street, Chicago Illinois, 60655. (Exhibits B and E.)

14. This Court also has personal jurisdiction over AvTurf L.L.C.. because, among other things, it has continuous and systematic business contacts with the State of Illinois and this District, including conducting of substantial and regular business in Illinois through marketing,

sales, offers for sale, installations, project support, and/or product testing of their artificial turf in Illinois.

15. Further, on information and belief, AvTurf L.L.C. has completed two major artificial turf installations and a number of tests of its artificial turf in Illinois at Chicago's Midway International Airport ("Midway Airport") and Chicago O'Hare International Airport ("O'Hare Airport"), both located in Illinois and this District. AvTurf L.L.C.'s website advertises numerous demonstrations and installations at O'Hare Airport and Midway Airport. A copy of the relevant website pages providing this information is attached as Exhibit C.

16. In addition, AvTurf L.L.C. in 2002 created a press release stating that its first-ever installation of artificial turf was in Chicago and that its artificial turf has undergone testing at Midway Airport. According to the news release, AvTurf L.L.C. is "Chicago-based." A copy of the news release is attached as Exhibit D.

17. AvTurf L.L.C. has also availed itself of the jurisdiction of this Court by filing a lawsuit in this Court captioned *Airport Surface Technologies, L.L.C. and AvTurf L.L.C. v. FieldTurf, Inc.*, No. 02-7960 (N.D. Ill.) A copy of the complaint in that lawsuit is attached as Exhibit E.

18. AvTurf L.L.C. also employed the services of one or more attorneys resident in Chicago to prosecute the '196 patent from 2011 to 2015, including at least Eric Williams, who is located in the Chicago office of the law firm of K&L Gates. Mr. Williams was listed as the representative of the applicants for the '196 patent, and the email address for correspondence to the applicants in the prosecution file history of the '196 patent was listed as chicago.patents@klgates.com. This is reflected in Exhibit F.

19. This Court also has personal jurisdiction over Act Global. Among other things, on information and belief, AvTurf and Act Global are partners in the business of making, selling and/or installing artificial turf at airports and airfields. (Exhibit G.)

20. On information and belief, according to Act Global's website, AvTurf and Act Global have an exclusive worldwide partnership intended to bring artificial turf to the aviation market, including in this District. This is reflected on the website www.actglobal.com/aviation.php, attached at Exhibit H. This website also identifies AvTurf's website address and identifies AvTurf Standards and Testing. It identifies that Act Global, as part of its partnership with AvTurf, advertises AvTurf.

21. On information and belief, according to an AvTurf brochure, as part of Act Global's partnership with AvTurf, Act Global provides to AvTurf "synthetic turf technology" as a "leading synthetic turf manufacturer." Further, the partnership alleges that it can provide marketing opportunities alongside taxiway areas to increase airport revenue, including in this District. This is reflected in Exhibit I.

22. On information and belief, Act Global has supplied and/intends to supply AvTurf L.L.C. with artificial turf for installation and/or related artificial turf technology.

23. On information and belief, there is an agency relationship between Act Global and AvTurf L.L.C. related to business of making, selling and installing artificial turf at airports and airfields.

24. On information and belief, Daniel C. McSwain, a named inventor on the '196 patent, is identified as the Vice President of Sales and Operations of AvTurf L.L.C. and also as a Director and Agent of Act Global. Mr. McSwain therefore has management responsibility for both parties and the partnership between them.

25. Further, on information and belief both Defendants purposefully avail themselves of the privilege of doing business in the State of Illinois and in this District. On information and belief, in December 2014 or early 2015, AvTurf L.L.C. and Act Global (or its predecessor in interest), acting in concert or with one party directing the other, transacted business in this State and this District by submitting a bid to secure a contract for the O'Hare project. The cost of the project was estimated by the City of Chicago to be $15,000,000 to $25,000,000.

26. In addition, as set forth in detail below, Act Global, in partnership with AvTurf, L.L.C., has interfered or attempted to interfere with FieldTurf's business operations in this District by claiming that FieldTurf's work on the O'Hare project, in this District, infringes the '196 patent; by demanding FieldTurf immediately cease and desist from its work on the O'Hare project; demanding that FieldTurf pay Act Global damages relating to its work on the O'Hare project; and threatening to take action if FieldTurf does not satisfy Act Global's numerous demands and satisfactorily respond to its demands by December 18, 2015.

27. This interference or attempt to interfere first occurred in a letter dated December 1, 2015, from Defendants on letterhead that identifies both "AvTurf" and "Act Global." The top of the letter identifies the sender as AvTurf, and the letter is signed by Paula Mathieson. (Exhibit J.)

28. Also as discussed more below, Act Global and AvTurf in their December 1, 2015, letter, indicated to FieldTurf employee Charles Cook that Act Global is the owner of the '196 patent. (*Id*.) That allegation is contradicted by both the face of the '196 patent and the assignment records for the '196 patent available at the United States Patent and Trademark Office, as discussed further below. Those documents identify AvTurf L.L.C. as the assignee of the '196 patent.

29. However, if it is established that Act Global is the current owner or assignee of the '196 patent with standing to enforce that patent, contrary to public records controlled by AvTurf L.L.C., then, on information and belief, Act Global acquired its rights and interest in the '196 patent through a recent Illinois transaction with AvTurf L.L.C., an Illinois company and the previous owner/assignee of the '196 patent.

30. Venue is proper under 28 U.S.C. § 1391(b), §1391(c), and §1391(d), as, among other things, Defendants reside in this District and because both Defendants are attempting to restrict FieldTurf's business operations as they relate to the alleged infringing installation of artificial turf within this District at O'Hare International Airport, as described in more detail above and below. A substantial part of the events or omissions giving rise to this claim therefore occurred in this District, and a substantial part of property that is the subject of the action is situated in this District.

## **DEFENDANTS' DEMAND LETTER**

31. FieldTurf is a leading installer of artificial turf, world-wide, including in Illinois and this District. One type of artificial turf that FieldTurf offers is called Air FieldTurf™, which is designed specifically for airports and airfields to, among other things, improve safety, improve visibility, inhibit erosion, and mitigate risks from wildlife.

32. FieldTurf was selected to install artificial turf at O'Hare Airport as part of Project Number: OH6136.200.620—the O'Hare project. This was part of the City of Chicago's O'Hare Modernization Program for Taxiway LL.

33. FieldTurf completed the first phase (of two phases) of installations for the O'Hare project in the Fall of 2015. FieldTurf intends to begin the second round of installations for the O'Hare project in the Spring of 2016.

34. U.S. Patent No. 9,157,196 was issued by the U.S. Patent and Trademark Office on October 13, 2015. The '196 patent names as inventors Daniel C. McSwain and Timothy M. Connelly. A copy of the '196 patent is attached as Exhibit K, and its contents are herein incorporated by reference as if set forth verbatim.

35. The face of the '196 patent indicates that the Assignee of the patent is Defendant AvTurf L.L.C. Publicly available assignment records at the United States Patent and Trademark Office also indicate that AvTurf L.L.C. is the assignee of the '196 patent. (Exhibit L.) Publicly available records thus demonstrate that AvTurf can bring a lawsuit to enforce the '196 patent, whether meritorious or not.

36. On December 1, 2015, AvTurf and Act Global sent Charles Cook of FieldTurf a letter claiming that Act Global is the owner of the '196 patent and alleging that "FieldTurf may be infringing certain claims of the '196 patent" (the "Demand Letter"). A copy of the Demand Letter is attached as Exhibit J.

37. The Demand Letter is written on letterhead containing, on information and belief, AvTurf L.L.C.'s logo, and, at the bottom, the name "Act Global" along with the website: actglobal.com/avturf.

38. The Demand Letter further states that because of the alleged infringement of the '196 patent, "AVTurf therefore requests that Field Turf immediately cease its infringing activity, desist from such infringing activity in the future and comply with AVTurf's other requirements set out in this letter. A copy of the patent is enclosed for your reference."

39. The Demand Letter further states, "The installation method specified for an installation project at the Chicago O'Hare airport is an installation method covered under the '196 Patent and infringes claims of the '196 Patent in violation of Section 271 of the Patent Act."

40. The Demand Letter further threatens that "Patent infringement is a serious matter and AVTurf expects third parties to respect its patent and rights."

41. Thereafter, the Demand Letter demands that FieldTurf meet three listed requirements, specifically, that FieldTurf "[i]mmediately cease and desist from all further activity that infringes the claims of the '196 patent," "[p]rovide AVTurf with sufficient information to determine the number of all infringing processes and all proceeds therefrom and pay suitable damages for the infringement," and "[p]romptly provide AVTurf with written confirmation that FieldTurf will comply with these demands."

42. The Demand Letter warns that "Field Turf is specifically advised that any failure or delay in complying with these demands may compound the damages for which Field Turf may be liable."

43. The Demand Letter then threatens, "If AVTurf does not receive a satisfactory response to these demands by the close of business on December 18, 2015, AVTurf is prepared to take all steps necessary to protect its valuable intellectual property rights, without further notice to Field Turf."

44. The Demand Letter closes by stating, "The above is not an exhaustive statement of all the relevant facts and law.  AVTurf expressly reserves all of its legal and equitable rights and remedies, including the right to seek injunctive relief and recover monetary damages."

45. On information and belief, Defendants are preparing to file a complaint against FieldTurf alleging that FieldTurf infringes the '196 patent, if FieldTurf does not meet each and every demand set forth in the Demand Letter on the schedule mandated by Defendants.

46. In view of these facts and circumstances, including Defendants' assertion that FieldTurf's activities relating to the O'Hare project, part of which is completed and part of which is

scheduled to begin in Spring of 2016, have infringed and will infringe the '196 patent; Defendants' demands that FieldTurf pay damages based upon specific FieldTurf activity relating to the O'Hare Airport project; and Defendants' threats to take necessary steps if FieldTurf does not respond satisfactorily by December 18, 2015, an actual controversy exists between FieldTurf and Defendants.

## THE '196 PATENT

47. The '196 patent contains independent claims 1 and 12, and dependent claims 2-11 and 13-15. Claim 1 recites: "A method for installing artificial turf at an airport or airfield comprising: removing only an edge portion of an airport runway or taxiway so as to define a new surface only at the edge portion of the runway or taxiway; adhering, via an adhesive, a section of artificial turf directly to the new surface at the edge portion of the runway or taxiway; and applying an infill to at least a portion of the artificial turf." (Exhibit K.)

48. Dependent claims 2-11 include all of these limitations, plus additional limitations recited in those claims.

49. Claim 12 of the '196 patent recites: A method for installing artificial turf at an airport or airfield comprising: removing only an edge portion of an airport runway or taxiway so as to define a tapered surface only at the edge portion of the runway or taxiway; adhering, via an adhesive, a section of artificial turf directly to the tapered surface at the edge portion of the runway or taxiway; and applying an infill to at least a portion of the artificial turf.

50. Dependent claims 13-15 include all of these limitations, plus additional limitations recited in those claims.

51. The '196 patent is titled "Adhesively Secured Artificial Turfs For Airports And Methods Of Installing Such Artificial Turfs."

52. The Abstract of the '196 patent states that "[a] method for installing artificial turf at an airport or airfield includes…adhering a section of artificial turf to the new surface of the runway or taxiway…." The Abstract of the '196 patent further recites "[a]n artificial turf system for an airport includes…an artificial turf is adhesively secured to the…surface of the airport runway or taxiway…."

53. The '196 patent contains 5 Figures. None of the Figures depicts securing artificial turf to any part of a runway or taxiway through the use of a fastener/nail or other mechanical securing mechanism.

54. The Summary section of the '196 patent states, among other things, that "The present disclosure provides systems and methods for securing and installing artificial turf around airport runways or taxiways (including any shoulder(s) of the runway or taxiway) without the need for additional securing mechanisms."

55. The prosecution file history of the application that led to issuance of the '196 patent is attached as Exhibit F. It includes an Applicant-Initiated Interview Summary dated November 20, 2014. In that summary, among other things, the Patent Office Examiner states as follows:

> Williams [the applicants' attorney] and McSwain [one of the named inventors] discussed the invention and how it differs from the prior art. Specifically, applicant noted how the turf is installed, without prior art mechanical attachment means, by milling an edge portion of the runway and adhering an edge of the artificial turf via the milled runway edge. Applicant argued this method provides a reduction in foreign object damage…due to the elimination of mechanical attachment means (e.g., pins, screws, headers, etc.).

56. The prosecution file history of the application that led to issuance of the '196 patent includes an Applicant-Initiated Interview Summary dated June 9, 2015. In that summary, among other things, the Patent Office Examiner states as follows: "Applicant argued a patentable distinction between the present invention and the prior art was that the section of artificial turf was adhered directly to the new runway surface edge by means of an adhesive. I agreed that

Carr did not teach such a direct adhesion, but noted that the claims were not commensurate in scope with applicant's summary."

57. In response, the named inventors, through their attorney, amended claim 1 of the application that led to the '196 patent by adding the following underlined phrases, so that the claim requires "adhering, via an adhesive, a section of artificial turf directly to the new surface at the edge portion of the runway or taxiway…."

58. Also in response, the named inventors, through their attorney, amended claim 12 of the application that led to the '196 patent by adding the following underlined phrases, so that the claim requires "adhering, via an adhesive, a section of artificial turf directly to the tapered surface at the edge portion of the runway or taxiway…."

59. The claim term "adhering, via an adhesive, a section of artificial turf directly to the new surface at the edge portion of the runway or taxiway" in claim 1 thus does not encompass and, as explained by the examiner, was intended to "eliminat[e]…mechanical attachment means" for attaching turf to a runway or taxiway. Thus, the claims as amended and allowed do not cover attaching turf to a runway or taxiway through the use of any mechanical means, alone or in combination with means of adhering the turf.

60. The claim term "adhering, via an adhesive, a section of artificial turf directly to the tapered surface at the edge portion of the runway or taxiway" in claim 12 thus does not encompass and, as explained by the examiner, was intended to "eliminat[e]…mechanical attachment means" for attaching turf to a runway or taxiway. Thus, the claims as amended and allowed do not cover attaching turf to a runway or taxiway through the use of any mechanical means, alone or in combination with means of adhering the turf.

**FIELDTURF USA INC.'S ACTIVITIES AT O'HARE INTERNATIONAL AIRPORT**

61. FieldTurf's accepted installation method of the artificial turf in connection with this O'Hare project requires fastening the turf to any asphalt taxiways or runways with both an adhesive and a nail fastener.

62. FieldTurf's accepted installation method of the artificial turf in connection with this O'Hare project requires fastening the turf to any concrete taxiways or runways with both an adhesive and a nail fastener.

63. FieldTurf has conducted all work on the O'Hare project in accordance with these accepted installation methods. FieldTurf currently intends to conduct any future work on the O'Hare project and all future aviation turf projects in accordance with these specifications.

64. The nail fasteners FieldTurf has used and will use in connection with its work on the O'Hare project and other similar projects are mechanical attachment means that bring such work outside the scope of the requirement of claim 1 of the '196 patent that requires "adhering, via an adhesive, a section of artificial turf directly to the new surface at the edge portion of the runway or taxiway."

65. The fasteners FieldTurf has used and will use in connection with its work on the O'Hare project and other similar projects are mechanical attachment means that bring such work outside the scope of the requirement of claim 12 of the '196 patent that requires "adhering, via an adhesive, a section of artificial turf directly to the tapered surface at the edge portion of the runway or taxiway."

66. For at least this reason, the work that FieldTurf has done and will do at O'Hare Airport is outside the scope of at least one limitation in claims 1 and 12 of the '196 patent, the work that FieldTurf has done and will do at O'Hare Airport has not infringed and will not infringe any claim of the '196 patent.

67. Further, the '196 patent issued on October 13, 2015. The work FieldTurf has already completed on the O'Hare project was completed before that date. That work therefore also does not infringe any of the claims of the '196 patent for at least this additional reason.

## COUNT I

## <u>DECLARATORY JUDGMENT OF NONINFRINGEMENT OF UNITED STATES PATENT NO. 9,157,196 B2</u>

68. FieldTurf repeats and realleges each of the allegations in paragraphs 1-67 as if fully set forth herein.

69. There is a substantial, present, genuine and justiciable controversy between FieldTurf and Defendants, and a declaration of rights is both necessary and appropriate to establish that the work that FieldTurf has done and will do in connection with the O'Hare project does not infringe any claim of the '196 patent.

70. As a result of Defendants' serious, specific, and urgent demands to FieldTurf relating to alleged infringement of the '196 patent, including the demand of a response to numerous requirements by December 18, 2015, and also in light of the fact that FieldTurf plans to continue its project at O'Hare Airport in Spring of 2016, FieldTurf is in reasonable and serious apprehension of imminent suit by AvTurf for patent infringement, including suit for injunctive relief.

71. As a result of Defendants' serious, specific, and urgent demands to FieldTurf relating to alleged infringement of the '196 patent, including the demand of a response to numerous requirements by December 18, 2015, and also in light of the fact that FieldTurf plans to complete its project at O'Hare Airport in Spring of 2016, FieldTurf is in reasonable and serious apprehension of imminent suit by Act Global, if Act Global is correct in alleging that it owns the '196 patent, contrary to available public records.

72. For at least the reasons stated above concerning the scope of the claims of the '196 patent and FieldTurf's accepted installation method for the O'Hare project, FieldTurf has not infringed, is not infringing, and the work that FieldTurf will do at O'Hare Airport in Spring of 2016 or anywhere else in the future will not infringe, any claims of the '196 patent.

73. None of FieldTurf's installations as part of the O'Hare project to date have taken place during the life of the '196 patent.  FieldTurf's actions to date therefore do not infringe any claims of the '196 patent.

## PRAYER FOR RELIEF

WHEREFORE, FieldTurf respectfully requests the Court enter judgment as follows:

A. Declaring that the claims of the '196 patent have not been infringed by FieldTurf's installation at O'Hare Airport;

B. Declaring that FieldTurf's planned installation at O'Hare Airport in Spring of 2016 will not infringe the claims of the '196 patent;

C. Declaring that any other method that uses the same or similar technique that FieldTurf used for the O'Hare Airport project would not infringe the '196 patent;

D. Awarding FieldTurf its costs, expenses, and reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

E. Awarding FieldTurf such other relief that the Court deems just and proper under the circumstances.

## JURY DEMAND

In accordance with Fed. R. Civ. P. 38 and 39, FieldTurf asserts its rights under the Seventh Amendment to the United States Constitution and demands a trial by jury on all issues that may be so tried.


Dated: December 18, 2015          Respectfully submitted,

By: /s/ Kevin Warner
    Michael L. Brody
    Kevin E. Warner
    Erin Solomon
    WINSTON & STRAWN LLP
    35 W. Wacker Drive
    Chicago, IL 60601
    Telephone: (312) 558-5600
    Facsimile: (312) 558-5700

*Attorneys for Plaintiff FieldTurf USA, Inc.*